UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNA LOSCH, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6644 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ADVANCED CALL CENTER TECHNOLOGIES, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jenna Losch alleges that Advanced Call Center Technologies, LLC ("ACCT") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Doc. 1, by calling her cell phone on numerous occasions over a two-week period. Doc. 1. With discovery closed and a jury trial set for September 11, 2017, Doc. 46, ACCT has moved for summary judgment, Doc. 32. The motion is granted as to the TCPA claim and denied as to the FDCPA claim.

**Background**

The following facts are stated as favorably to Losch as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering ACCT's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Losch visited a Banana Republic store in Chicago on May 4, 2014. Doc. 34 at ¶ 16; Doc. 39 at 4. She decided to obtain a Banana Republic credit card after a sales associate explained that it would entitle her to a discount for her purchases that day. Doc. 39 at 6. The sales associate briefly reviewed the terms of the credit card agreement with Losch, and she then signed

the agreement and provided her cell phone number. Doc. 34 at ¶ 17; Doc. 39 at 4, 7. Losch was generally familiar with how the credit card worked, and she knew that she would be bound by the terms of the credit card agreement even if she did not read them. Doc. 34 at ¶¶ 18, 20; Doc. 39 at 4. Among those terms were the following:

> **This Agreement.** This is an Agreement between you and Synchrony Bank, 170 Election Road, Suite 125, Draper, UT 84020, for your credit card account shown above. By opening or using your account, you agree to the terms of the entire Agreement. The entire Agreement includes the four sections of this document and the application you submitted to us in connection with the account. These documents replace any other agreement relating to your account that you or we made earlier or at the same time.
>
> **Consent To Communications**. You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephone dialing systems, and/or an artificial or prerecorded voice. This consent applies even if you are charged for the call under your phone plan. You are responsible for any charges that may be billed to you by your communications carriers when we contact you.

Doc. 34 at ¶ 22; Doc. 39 at 4.

Losch charged the purchases she made at Banana Republic that day to the Banana Republic card, and she later used the card to pay for other purchases. Doc. 34 at ¶¶ 16, 24; Doc. 39 at 4. In the late summer or early fall of 2014, Losch began experiencing financial hardship and stopped making payments on the card. Doc. 34 at ¶¶ 26-27; Doc. 39 at 4.

ACCT makes outbound debt collection calls on behalf of Synchrony Bank, the bank that issued Losch's card. Doc. 34 at ¶ 5; Doc. 39 at 2. ACCT was assigned to make collection calls to Losch, and it used an automatic dialer system to call the cell phone number that Losch provided on her credit card application. Doc. 34 at ¶¶ 8-9, 31; Doc. 39 at 3, 5, 8-9. That system is preset to make up to five calls per day, with calls placed no more than ninety minutes apart. Doc. 34 at ¶¶ 13-14; Doc. 39 at 3. ACCT called Losch 87 times between December 5 and

December 23, 2014. Doc. 34 at ¶ 11; Doc. 39 at 3, 7. Three to five calls were placed each day, and no two calls were made less than about two hours apart. Doc. 34 at ¶¶ 13, 41; Doc. 34-4 at 25-30; Doc. 39 at 3, 5. The earliest call occurred at 9:07 a.m., and the latest at 8:42 p.m. Doc. 34 at ¶ 42; Doc. 39 at 5.

Losch did not pick up any of the calls until December 23. Doc. 34 at ¶ 46; Doc. 39 at 5. On that occasion, she told the ACCT representative that she was unable to pay the debt and asked that ACCT halt the calls. Doc. 34 at ¶¶ 47-48; Doc. 39 at 6. ACCT did not call her again. Doc. 34 at ¶ 49; Doc. 39 at 6.

Losch asserts that ACCT called her parents' phone number as well as her own. Doc. 39 at 5, 8. Losch's only evidentiary support for that assertion is a portion of her own deposition testimony in which she repeats a statement that her parents made to her. Doc. 34-1 at 8 ("My parents said they received a few calls … ."). That testimony is inadmissible hearsay, *see* Fed. R. Evid. 801, 802, which may not be used at summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

## Discussion

**I.     TCPA Claim**

The TCPA prohibits the use of any automatic telephone dialing system to call cell phones for non-emergency purposes without the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The parties agree that ACCT used an automatic telephone dialing system to call Losch's cell phone for a non-emergency purpose. They dispute whether Losch provided prior express consent when she signed up for the Banana Republic card. *See Toney v. Quality*

*Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) ("A defendant may avoid liability under this section by proving that it made the call with the prior express consent of the called party.").

ACCT is correct that Losch consented to be called. To obtain her credit card, Losch signed a contract that, as noted above, contained this language:

> **Consent To Communications**. You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephone dialing systems, and/or an artificial or prerecorded voice. …

Doc. 34 at ¶ 22. The contact information Losch provided was her cell phone number, and that is the number that ACCT called. *Id*. at ¶¶ 9, 17; Doc. 39 at 3-4.

That ACCT rather than Synchrony Bank made the calls is of no legal consequence. The credit card agreement expressly contemplated the possibility that a "servicer" would contact Losch, and the TCPA treats consent given to a creditor as if it were given to a third-party debt collector acting on the creditor's behalf. In a 2008 Declaratory Ruling, the FCC held that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt," and that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564-65 (2008) ("2008 FCC Order"); *see Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *6 (C.D. Cal. Apr. 14, 2016) (citing the 2008 FCC Order for the proposition that "Saulsberry consented to calls regarding his debt to Shell when he provided them his phone number, and this consent extends to both Shell and any third-party collector acting on behalf of Shell"); *Frausto v. IC Sys., Inc.*, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011) (interpreting the 2008 FCC

4

Order to mean that "third-party debt collectors step into the shoes of the creditor on whose behalf they are recovering the debt"). Under the Hobbs Act, 28 U.S.C. § 2342(1), the FCC ruling binds this court. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 & n.3 (7th Cir. 2010) (recognizing that FCC orders interpreting the TCPA bind district courts under the Hobbs Act); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013) (quoting the 2008 FCC Order and observing that it is "final and controlling" on the district court).

Accordingly, Losch provided her prior express consent to receiving debt collection calls from ACCT when she obtained her Banana Republic card. That consent necessarily defeats her TCPA claim. *See Frausto*, 2011 WL 3704249, at *2-3 (awarding summary judgment to the defendant on a TCPA claim because the plaintiff provided "prior express consent"); *Greene v. DirecTV, Inc.*, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (same).

## II.   FDCPA Claim

The FDCPA provides in relevant part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> … (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(5). The parties agree that the following standard governs whether repeated phone calls violate § 1692d(5):

> Whether repeated phone calls were made with intent to annoy, abuse, or harass depends on the volume and pattern of calls. Generally, there are two types of evidence presented to show an intent to harass under § 1692d(5). First, where a plaintiff has shown that he asked the collection agency to stop calling … and the collection agency nevertheless continued to call the plaintiff … . Second, the volume and pattern of calls may themselves evidence an intent to harass.

5

*Allen v. Bank of Am., N.A.*, 2012 WL 5412654, at *8 (N.D. Ill. Nov. 6, 2012) (quoting *Kube v. Creditors Collection Bureau, Inc.*, 2012 WL 3848300, at *2 (N.D. Ill. Aug. 30, 2012)); *see also Bruner v. AllianceOne Receivables Mgmt., Inc.*, 2017 WL 770993, at *2-3 (N.D. Ill. Feb. 28, 2017) (discussing and applying this standard). Because ACCT did not continue to call Losch after she asked it to stop, Losch opposes summary judgment based on the volume and pattern of ACCT's calls.

As a general rule, whether the volume and pattern of a debt collector's calls violates the FDCPA is a jury question. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."); *Hendricks v. CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012). Although that general rule is "not an iron-clad one," *Allen*, 2012 WL 5412654, at *7, no exception is warranted here.

ACCT called Losch's cell phone 87 times over a period of nineteen days, with three to five (but usually five) calls each day. Doc. 34 at ¶ 11; Doc. 34-4 at 25-30; Doc. 39 at 3, 7-8. True, ACCT did not call Losch early in the morning or late at night, Doc. 34 at ¶ 42; Doc. 39 at 5, or make one call immediately after another, Doc. 34 at ¶ 41; Doc. 34-4 at 25-30; Doc. 39 at 5. Those facts certainly could lead a reasonable jury to find in ACCT's favor, but not necessarily so. As ACCT continued to call Losch day after day, at various times of day, on weekends and weekdays for over two weeks, any belief that Losch was not answering the calls because she missed them inadvertently or that she would have wanted to be called at a different time became less and less reasonable—or so a reasonable jury could find. A jury thus could conclude that, at some point during those nineteen days, ACCT's intent in continuing to call crossed the line from "a legitimate persistent effort to reach the plaintiff," *Carman v. CBE Grp.*, 782 F. Supp. 2d 1223,

6

1231 (D. Kan. 2011), to an unlawful effort to "annoy, abuse, or harass" her, 15 U.S.C. § 1692d(5). Losch's FDCPA claim therefore survives summary judgment. *See Kube*, 2012 WL 3848300, at *2-3 (holding that "the reasonableness of the call volume and pattern … remains a genuine issue of material fact for trial" where the debt collector called the plaintiff 98 times over almost nine months); *Hendricks*, 891 F. Supp. 2d at 896-97 (denying the debt collector's summary judgment motion where the collector called the plaintiff approximately three times per day for two months); *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010) ("Because it is undisputed that I.C. System called Basset thirty-one times over a twelve day period, Bassett has presented sufficient evidence raising a genuine issue of material fact that I.C. System violated Section 1692d(5) of the FDCPA.").

## Conclusion

ACCT's summary judgment motion is granted as to Losch's TCPA claim and denied as to her FDCPA claim. The case will proceed to trial on the FDCPA claim.

April 12, 2017

United States District Judge